# UNITED STATES DISTRICT COURT
## for the
### Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>THE BODY OF ALICIA GREEN FOR PURPOSES OF<br>OBTAINING KNOWN SAMPLES OF<br>DEOXYRIBONUCLEIC ACID | Case No. 1:23-MJ-00428 |

## APPLICATION FOR A SEARCH WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Alicia Green

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

DNA of Alicia Green

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841a1 and b1C<br>21 U.S.C. 846 | Distribution and Attempt to Distribute a Controlled Substance. |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

James L. Drake, TFO DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____FaceTime video conference____ *(specify reliable electronic means.)*

Date: **May 23, 2023**

*Judge's signature*

City and state: Cincinnati, Ohio

Stephanie K. Bowman, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE BODY OF ALICIA GREEN FOR PURPOSES OF OBTAINING KNOWN SAMPLES OF DEOXYRIBONUCLEIC ACID | Case No. 1:23-MJ-00428 |

### AFFIDAVIT IN SUPPORT OF A WARRANT TO SEARCH AND SEIZE

I, James L. Drake, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510 (7) of Title 18, United States Code, that is, an officer of the United States who is empowered by the law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516.

2. I am a Detective with the Amberley Village Police Department (AVPD), currently assigned to the Heroin Coalition Task Force (HCTF) with twenty-three (23) years of law enforcement experience. I am also deputized by the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO) and have been since October 2021. I completed my law enforcement training at the Great Oaks Police Academy in Cincinnati, Ohio and have received extensive additional training in criminal investigations throughout my law enforcement career to include training in offenses involving controlled substances.

3. Facts set forth in this affidavit are based on personal knowledge derived from my participation in this investigation and upon information presented to me by other law enforcement officers involved in this case. The sources of my information and beliefs include:

a. Oral and written reports about this and other investigations which I have received from TFO's within the HCTF and other law enforcement authorities;

b. Physical surveillance conducted by TFO's of the HCTF and/or other law enforcement authorities and which have been reported to me either directly or indirectly;

4. By virtue of my involvement in these investigations, I have become familiar with the various means and mechanisms used by narcotic traffickers to import and distribute controlled substances and to remain at large without being detected by law enforcement. I am familiar with the fact that drug traffickers make tremendous profits through drug trafficking and require large amounts of currency to operate surreptitiously. In this regard, I have obtained and executed numerous search warrants pursuant to which I have seized ledgers, notebooks, papers, and other related record-keeping instruments, all of which have been used to record multiple narcotics and related money laundering transactions, telephone books, diaries, invoices, beepers, cellular telephones, and correspondence, all of which have contained evidence of narcotic trafficking and money laundering violations.

5. During the course of my law enforcement career, I have conducted and participated in the investigation of numerous criminal offenses, including those involved in the current investigation. I have participated in hundreds of investigations including but not limited to: Aggravated Murder, Involuntary Manslaughter, Aggravated Robbery, Rape, Child Molestation, Burglary, Drug Trafficking and Theft which resulted in the successful prosecution of defendants in the State and Federal Courts. These investigations have also included the

unlawful importation, possession with intent to distribute and distribution of illegal substances, the related money laundering instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotiCS21-04 offenses. These investigations during my career, which have resulted in the seizure of narcotics, arrests of suspects, their prosecution, conviction and the seizure of large amounts of U.S. currency; and have involved: the use of confidential informants; undercover agents; toll records; physical surveillances and the execution of search warrants. I have planned, participated in and supervised the execution of numerous search warrants authorizing the search of drug traffickers, locations associated with drug traffickers and their co-conspirators, such as residences, businesses, storage facilities, outbuildings, safety deposit boxes, and vehicles. I have testified in grand jury proceedings; and have written reports and analyzed documents in the course of investigations.

6. I have been involved in numerous post-arrest interviews of individuals, interviewed defendants in conjunction with post-arrest proffers, interviewed confidential informants and other non-defendant individuals with knowledge of illegal drug trafficking. During such interviews and discussions with other experienced agents, I have become familiar with the day-to-day operations of distributors and transporters of controlled substances. I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by illegal drug traffickers in the course of their criminal activities, including the use of firearms to protect their narcotics related activities and of cellular telephones, pagers, and personal digital assistants to facilitate communications while attempting to avoid law enforcement scrutiny.

7. As a result of my participation in these, and other activities, I have gained particular knowledge in the use of undercover agents, confidential informants, physical

surveillance, consensual recordings, investigative interviews, mail covers, garbage searches, GPS tracking devices, pole-mounted cameras, grand jury subpoenas and federal and state search warrants. In addition to using these investigative techniques, I have been required to analyze information resulting from traditional record sources, such as financial records, utility records, and telephone toll and subscriber records, as well as nontraditional record sources, such as the informal ledgers routinely maintained by narcotic traffickers listing amounts of drugs received from sources and distributed to customers and the amounts of money received from customers and owed to sources, commonly referred to as pay-owe sheets. I have also gained experience in the identification and collection of drug and non-drug evidence.

8. By virtue of my training and experience, through my conversations with and review of reports from other experienced agents and officers who conduct drug investigations, I have become familiar with the methods used by drug traffickers to import, transport, store, safeguard, remit and/or launder drug proceeds; and the methods used by drug traffickers to collect, transport, store, safeguard, remit and/or launder drug proceeds; and the methods used by drug traffickers to obtain and utilize telephones, pagers, computers, and other devices in order to communicate with each other; and the jargon and/or codes commonly used when they refer to drugs and/or drug proceeds. As a result of my experience, I have become familiar with the day-to-day operations and the various tools, methods, trends, paraphernalia and related articles used by various traffickers in their efforts to manufacture, possess, import, conceal, package, use and distribute controlled substances.

9. I have also had discussions with other law enforcement officers and other cooperating individuals about the packaging and preparation of narcotics, methods of operations, and security measures which are often employed by narcotic traffickers. I have examined

4

documentation of various methods in which illicit drugs are smuggled, transported, and distributed. Through these investigations, I have gained expertise in the use of a variety of law enforcement techniques, including the utilization of confidential informants and undercover agents, the use of physical surveillance techniques, and various other types of electronic surveillance techniques, such as body wires and transmitters. Additionally, I have gained knowledge and expertise in the utilization of telephone toll analysis; the analysis of traditional types of records, including financial records, telephone records and utility records; and nontraditional records, including records routinely maintained by narcotic traffickers listing amounts of drugs delivered and amounts of money owed (pay-and-owe sheets). I have also gained knowledge and expertise in the collection and identification of drug evidence and the analysis and interpretation of taped conversations obtained by the methods detailed above.

## PURPOSE OF THE AFFIDAVIT

10. I make this affidavit in support of an application for a warrant to search and obtain a Deoxyribonucleic Acid (DNA) sample from the person of Alicia GREEN as such DNA samples may constitute evidence of violations of federal law. This affidavit is intended to show that there is sufficient probable cause for the above-described search warrant and does not purport to set forth all my knowledge of, or investigation into, this matter. The facts and information contained in this affidavit are based on my personal knowledge, my training, and my experience.

## PROBABLE CAUSE

11. In or about October 2021, your affiant began an investigation into a subject believed to be distributing fentanyl. On October 6, 2021, your affiant was contacted by the Cincinnati Police Department (CPD) Sergeant (Sgt.) Lind for a suspected overdose death at 3023

Wardall Avenue, Cincinnati, OH 45211. White powder residue was located on the kitchen counter that appeared to be pushed into the form of a line using an Ohio identification card bearing the name Brian DUSOLD, which also had a white powder residue on it. Three clear plastic baggies used to package drugs were collected from the trash can under the sink. The packaging was submitted to the Hamilton County Coroner's Office for analysis. Their report of analysis, reported in CC21-03675 Report#2 found the packaging contained a fluorofentanyl, cocaine and fentanyl mixture. Their report of analysis, reported in CC21-03675 Report#5 showed that the packaging contained the major DNA profile originating from a female individual.

12. Additionally, two cell phones were located on scene; one cell phone was DUSOLD's and the other was believed to belong to DUSOLD's friend, Adam NUMRICH.

13. The Hamilton County Coroner's Office (HCCO) also responded and recovered the body of Brian DUSOLD

14. On October 7, 2021, your affiant was contacted by the Cincinnati Police Department (CPD) Sergeant (Sgt.) Ward for a suspected overdose death at 3027 Wardall Ave. Cincinnati, OH 45211. When officers arrived, they found a subject, later identified as Adam NUMRICH, deceased and seated in a chair on the back porch of 3027 Wardall Ave. Two glass pipes were found on the porch next to the deceased and were submitted to the Hamilton County Coroner's Office for analysis. Their report of analysis, reported in CC21-06685 Report#1 found the two glass pipes contained trace amount of cocaine.

15. The HCCO also responded and recovered the body of Adam NUMRICH.

16. On October 8, 2021, your affiant visually reviewed the text messages from both DUSOLD and NUMRICH's cell phones. Your affiant was able to determine that DUSOLD

6

(513-288-6382) appeared to have financed narcotic transactions between NUMRICH (513-464-5425) and an unidentified female third party, FNU LNU, who was utilizing phone number 513-499-7369. In the text message conversation between NUMRICH and 513-499-7369, which is timestamped as October 6 at 6:30AM and ending at October 6 at 6:57AM, NUMRICH requests more drugs by texting *"If I give you another 80 Will you make Me Like a good and fatty one bc that 100 you only had like .72 on you. I need more in general for sure and see if I can chill somewhere to smoke for. A?Little"*.

>\*Individuals purchasing illegal narcotics often refer to the cash amount to be purchased as well as the weight amount.
>
>\*\* This is the last outgoing text message sent from NUMRICH phone.

17. Cash App transactional data was discovered on both DUSOLD and NUMRICH's phones that involved DUSOLD (Brian Dusold / $BrianDusold), NUMRICH (Adam Numrich / $Nummy513), and later identified as GREEN utilizing the Cash App account Badu / $lauyrnhill. This data is correlated to the drug related text message correspondence between DUSOLD, NUMRICH, and GREEN (513-499-7369).

18. October 27, 2021-TFO's received a return from Square, Inc. dba Cash App with the following results regarding Badu / $lauyrnhill :

>Display Name History: *Alicia Green and Badu*
>
>Identity Verification Name: *is Alicia Green with Date of Birth of 08/25/1990*
>
>Phone Number: *513-499-7369*
>
>Alias includes: *513-499-7369, lauyrnhill and asa825*

19. A search of public records associated with the 513-499-7369 identified Alicia GREEN as being associated with that phone.

7

20. A search of Facebook for "Alicia Green", with a profile photo matching the potential subject above, was conducted and resulted with "Alicia Green (Ace Da Goddess)" with the URL of www.facebook.com/alicia.gree.161 and the Facebook ID of 100001484444200:

21. On October 12, 2021, TFO's ran a search for GREEN, DOB: 8/25/1990, through the CPD's records management system (RMS). A Burglary report was located, from July 19, 2021, which occurred at 2142 Storrs St., apartment #1 Cincinnati, OH 45204 and listed GREEN as the victim. She stated that $1200 U.S. Currency and a cell phone were taken by an unknown suspect(s). GREEN said that the cell phone number to the stolen phone was 513-499-7369.

22. October 14, 2021, TFO's drafted and served T-Mobile with an Administrative Subpoena requesting information associated with the phone number 513-499-7369.

23. On October 18, 2021, TFO's received the requested return information from T-Mobile verifying the subscriber information associated with the phone number 513-499-7369. The subscriber information showed the owner and subscriber as Alicial GREEN and the International Mobile Station International Subscriber Directory Number(MSISDN) as 513-499-7369.

*The MSISDN is the unique number that identifies a mobile subscriber.

24. On October 15, 2021, TFO's conducted surveillance at 2142 Storrs St. Cincinnati, OH 45204. Agents observed GREEN exit apartment #1 of the target address and get into an older model, white, Lincoln Navigator, with no license plates.

25. On October 16, 2021, TFO's Peters, Drake, Cox, and Schlie conducted surveillance at 2142 Storrs St. Cincinnati, OH 45204. TFO's observed GREEN exit apartment #1 of the target address and access the white Lincoln Navigator multiple times, but always returned to the residence and did not leave.

26. On October 21, 2021, TFO's met with a subject hereinafter referred to as Confidential Source (CS) 21-04. CS21-04 is known to TFOs and has been used in prior cases and shown to be reliable.

27. October 22, 2021, agents utilizing CS21-04 conducted a controlled purchase of $40 worth of crack cocaine/fentanyl from the user of 513-499-7369 (GREEN). TFO's met CS21-04 at a pre-determined location. The CS21-04 was search for contraband. The CS21-04 was equipped with an audio and video recording device which allowed agents to monitor the deal.

28. TFOs set up surveillance on 2142 Storrs St. Cincinnati, OH 45204 and observed the white Lincoln Navigator with no license plates parked in front of the residence. CS21-04 made a recorded phone call to the GREEN. CS21-04 told GREEN that they got her phone number from "white boy Nummy" (aka Adam NUMRICH which correlates with the Cash App username $Nummy513) and requested to buy "some" for "40". GREEN agreed to meet for the buy in 20 minutes in front of Family Dollar in Avondale. The CS21-04 reached back out to GREEN and she advised she was on her way but requested CS21-04 change the meeting location to the Marathon Gas Station located at 811 W.8th Street. Shortly thereafter, agents observed Alicia GREEN leave her residence at 2142 Storrs St. apartment #1 Cincinnati, OH 45204, enter the white Lincoln Navigator and drive eastbound on Storrs Street, north on State Street, east on W. 8th Street. GREEN then pulled into and park at a gas pump at the Marathon Gas Station (811 W. 8th St.). GREEN directed the CS21-04 to exit their vehicle and come enter her vehicle. The CS21-04 entered GREEN's vehicle, gave her $40 if pre-recorded confidential funds. GREEN then gave CS21-04 crack cocaine that was packaged in a plastic baggie tear off. CS21-04 told GREEN that they would like to meet her again. GREEN told CS21-04 she would meet and that

9

CS21-04 could bring more people to her and they would get "hooked up". The CS21-04 asked GREEN for her name and GREEN said "ASA" (Ay-Suh) and then spelled it, "A-S-A".

29. Following the deal, CS21-04 was instructed to drive to a pre-determined location and meet with agents, where the drugs would be recovered and a debriefing would occur. The CS21-04 was again checked for contraband. The purchased substance was submitted to the Hamilton County Coroner's Office for analysis. Their report of analysis, reported in CL21-07371, found the substance to be .371 grams of cocaine.

30. October 28, 2021-At the direction of TFO's, CS21-04 sent texts to 513-499-7369 (GREEN aka ASA) requesting another controlled narcotic purchase. GREEN responded to the text message and set up a time and location for the transaction.

31. TFO's met CS21-04 at a pre-determined location. The CS21-04 was search for contraband. The CS21-04 was equipped with an audio and video recording device which allowed agents to monitor the deal. TFO's set up surveillance on 2142 Storrs St. Cincinnati, OH 45204 at approximately 11:45am and observed the white Lincoln Navigator with no license plates parked in front of the residence.

32. At approximately 12:04pm, CS21-04 made a phone call to GREEN and stated that s/he was about 3-4 minutes away, in which GREEN responded in the affirmative. Shortly thereafter, TFO's observed GREEN exit the residence at 2142 Storrs St. apartment #1 Cincinnati, OH 45204 and enter the white Lincoln Navigator. GREEN drove west on Storrs St., north on State St., east on W. 8th St. and pulled into the Marathon Gas Station parking lot at 8th & Linn St. and parked at a gas pump. GREEN exited the Lincoln Navigator and walked over to CS21-04's vehicle where GREEN conducted a "hand-to-hand" transaction, giving a white rock-like substance in a plastic baggie tear off to the CS21-04 for $100 of pre-recorded confidential funds.

During the interaction between the CS21-04 and GREEN, GREEN asks if the CS liked the last one and stated, "It was some of my new". Your affiant knows from training, experience and knowledge that drug traffickers often change their mixture and use cutting agents to increase the weight and amount of the drugs to increase profit.

33. After the deal was completed, GREEN returned to the Lincoln Navigator and drove west on W. 8th St, south on Burns St., west on Storrs St. and then parked in front of 2142 Storrs St Cincinnati, OH 45204, where GREEN exited the vehicle and entered apartment #1. Following the deal, CS21-04 was instructed to drive to a pre-determined location and meet with agents, where the drugs would be recovered and a debriefing would occur. The CS21-04 was again checked for contraband. The purchased substance was submitted to the Hamilton County Coroner's Office for analysis. Their report of analysis, reported in CL21-07791, found the substance to be 1.181 grams of cocaine.

34. On November 2, 2021, at the direction of TFOs, CS21-04 sent texts to 513-499-7369 (GREEN aka ASA) regarding another controlled narcotics purchase. GREEN responded to and set up a time and location for the transaction. Following the plans set between the CS21-04 and GREEN, TFO's again utilized CS21-04 to conduct a controlled purchase of $100 worth of crack cocaine/fentanyl from the user of 513-499-7369 (GREEN).

35. TFOs met CS21-04 at a pre-determined location. The CS21-04 was searched for contraband. The CS21-04 was equipped with an audio and video recording device which allowed agents to monitor the deal. TFOs set up surveillance on 2142 Storrs St. Cincinnati, OH 45204 at approximately 11:45am and observed the white Lincoln Navigator with no license plates parked in front of the residence. At approximately 11:42am, the CS21-04 sent texts to GREEN and updated their location. Shortly thereafter, TFOs observed GREEN exit apartment #1 at 2142

Storrs St. Cincinnati, OH 45204 and enter the white Lincoln Navigator, drive west on Storrs St., north on State St., east on W. 8th Street and pull into the Marathon Gas Station parking lot at 8th & Linn Street and park at a gas pump. GREEN exited the Lincoln Navigator and walked over the CS21-04 vehicle where GREEN conducted a "hand-to-hand" transaction, giving a white rock-like substance in a plastic baggie tear off to the CS21-04 for $100 of pre-recorded confidential funds.

36. Following the deal, CS21-04 was instructed to drive to a pre-determined location and meet with agents, where the drugs would be recovered and a debriefing would occur. The CS21-04 was again checked for contraband. The purchased substance was submitted to the Hamilton County Coroner's Office for analysis. Their report of analysis, reported in CL21-07791, found the substance to be 1.105 grams of cocaine.

37. On September 21, 2022, at approximately 9:00 am, your affiant was conducting surveillance in the area of Storrs Avenue when a vehicle was located across from 2142 Storrs Avenue. The vehicle is described as an older model white GMC Yukon XL SUV bearing Ohio registration JUE6616. A check of the Ohio registration shows the registered owner as Alicia GREEN with an address of 2142 Storrs Avenue Cincinnati, Ohio 45204.

38. On November 1, 2022, at approximately 1:55pm, your affiant was conducting surveillance in the area of Storrs Avenue and observed Alicia GREEN exit 2142 Storrs Avenue and enter the older white GMC Yukon XL bearing JUE6616. GREEN was positively identified wearing yellow pajama style pants, a white t-shirt, and white shoes.

39. On December 7, 2022, at approximately 9:00am, your affiant once again observed the white GMC Yukon XL bearing Ohio registration JUE6616 parked on the street in front of 2142 Storrs Avenue.

40. On April 28, 2023, Alicia GREEN was located, arrested for Distribution and Attempt to Distribute a Controlled Substance; in violation of 21 U.S.C 841(a)(1) and (b)(1)(C).

41. On May 10, 2023, Alicia GREEN was indicted by a federal grand jury in the Southern District of Ohio on four counts for Distribution and Attempt to Distribute a Controlled Substance; in violation of 21 U.S.C 841(a)(1) and (b)(1)(C). Count One of that indictment includes the specification that two persons died as a consequence of the distribution.

42. All of the above-described events occurred in the Southern District of Ohio.

43. Based on the following facts provided above, your affiant believes that Alicia GREEN is the drug trafficker and source of supply for the drugs which ultimately led to the overdose deaths of Brian DUSOLD and Adam NUMRICH. These facts include:

- Recovered digital evidence from both DUSOLD and NUMRICH devices including timeline text messaging showing conversations requesting and receiving drugs, Cash App transactions showing payment from NUMRICH and DUSOLD to Alicia GREEN for drugs.

- Plastic packaging with trace amounts of a fluorofentanyl, cocaine and fentanyl mixture found at the overdose death scene with the major DNA profile originating from a female individual as noted in the reports from the Hamilton County Coroner's Office.

- Multiple drug transactions conducted by TFOs showing GREEN provides drugs to CS21-04. The surveillance conducted by TFOs showing GREEN leaves 2142 Storrs Avenue to make the drug deliveries to CS21-04 and returns to 2142 Storrs Avenue after delivery.

## CONCLUSION

44. Based on the foregoing, I believe that there is probable cause to issue a search warrant and obtain a Deoxyribonucleic Acid (DNA) sample from the person of Alicia GREEN, as this sample may constitute evidence of violations of federal law when compared to DNA sample(s) obtained fromt the scene of the demise. Therefore, I request that the Court allow TFOs to take a buccal swab from GREEN's mouth, rubbing the inside of her cheek to obtain a sample of saliva. Based on my training and experience, I know that this procedure is quick, painless, and involves minimal intrusion into the body. This sampling is substantively identical to the procedure that normally occurs when the U.S. Marshals process a prisoner. That said, the swab taken by U.S. Marshals is for identification purposes and not investigative purposes, and therefore, the undersigned does not have access to such samplings.

Respectfully submitted,

_TFO [signature]_
James L. Drake
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on by reliable electronic means, specifically, FaceTime video conference, this __23__ day of May 2023.

_Stephanie K. Bowman_
HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE